In re CERTAIN CARRIERS REPRE-
SENTED BY the EASTERN, WEST-
ERN AND SOUTHEASTERN CAR-
RIERS' CONFERENCE COMMITTEES

and

Certain of Their Employees Represented
by the Brotherhood of Locomotive En-
gineers, Brotherhood of Locomotive
Firemen and Enginemen, order of Rail-
way Conductors and Brakemen, Broth-
erhood of Railroad Trainmen, and the
Switchmen's Union of North America.

Misc. No. 41–63.

United States District Court
District of Columbia.

June 8, 1964.

See also, 229 F.Supp. 259.

Francis M. Shea, Lawrence J. Latto, Richard T. Conway, Washington, D. C., and Robert W. Yost, St. Louis, Mo., on behalf of the Carrier parties hereto.

John H. Haley, Jr., and John E. Bardgett, St. Louis, Mo., and Lester P. Schoene, Washington, D. C., on behalf of the Brotherhood parties hereto.

Howard E. Shapiro, of the Dept. of Justice, Washington, D. C., for the Dept. of Justice.

HOLTZOFF, District Judge.

This is a motion by an organization representing a group of railroad employees for a preliminary injunction against three railroads that were parties to a nation-wide arbitration, to restrain them from effectuating the decisions of certain special boards of adjustment relating to the composition of train crews.

The background and the history of the dispute that preceded the specific matter now presented is reviewed in detail by this Court in Brotherhood of Locomotive Firemen and Enginemen v. Chicago, Burlington & Quincy Railroad Co., D.C., 225 F.Supp. 11, affirmed Brotherhood of Locomotive Firemen and Enginemen v. Certain Carriers Represented, D.C.Cir., 331 F.2d 1020, certiorari denied 377 U.S. 918, 84 S.Ct. 1181, 12 L.Ed.2d 187, and that history will not be reiterated here. To recapitulate briefly, by Act of August 28, 1963, also known as Public Law 88–108, 77 Stat. 132, the Congress created a special Board of Arbitration and vested in it the authority to arbitrate two issues between the Class 1 railroads of the United States, aggregating about two hundred, and the representatives of their employees. The two issues were: first, whether firemen may be dispensed with on Diesel engines in freight service, as well as in yard service; and if so, to what extent; and second, the composition of train crews. The statute provided in Section 5 that the award of the Board of Arbitration should not become effective until sixty days after it was filed. The Board of Arbitration made an award in due course in which it determined the issues as to the firemen, and this disposition is not relevant to the present application. As to the second question in controversy, the Arbitration Board formulated certain definite standards and considerations to control the determination of the composition of the crews for any particular runs or groups of runs. It then provided for the creation of special boards of adjustment for the purpose of determining any dispute arising as to the composition of train crews that could not be settled by negotiation in accordance with the formulae prescribed by the award.

By its terms, the award became effective on January 25, 1964, that being sixty days following its filing. In the opinion to which reference has been made, page 16, this Court determined that this was the effective date. On that day the railroads involved in the present application served notices on the plaintiff organization proposing to reduce the number of members of certain train crews. They attempted to negotiate in accordance with the procedure prescribed by the award, but these efforts proved abortive. They then requested that special adjustment boards be created in accordance with the terms of the award.

The award provided that such boards should consist of two partisan members, each chosen by one of the parties, and that the two should name a neutral member who should be chairman. The National Mediation Board was to select the neutral member if the other members should fail to do so, and was also to name a member of the board in lieu of any partisan member if the party refused to name the partisan member. Accordingly, the National Mediation Board named both a chairman and a member representing the employees.

The employees, by their representatives, appeared before the boards and objected to their jurisdiction. Their objections were overruled, and then they withdrew from further proceedings and did not participate in them. In due course the awards, which are now before this Court, were rendered by the boards, granting some of the requests for reduction of the size of train crews and denying others.

The basis of the present application is: first, that the boards had no jurisdiction, in that the notices were served prematurely; and, second, that the boards failed to comply with what plaintiff's counsel contend was the correct procedure. It is claimed in behalf of the plaintiffs that in view of the fact that an action to impeach the award was brought, as permitted by the Railway Labor Act, Section 9, 45 U.S.C. § 159, the award was not en-

forceable until that litigation was disposed of and a final judgment entered.

■ The Court disagrees. There was no stay applied for, and certainly none granted. There was no supersedeas. There was no stipulation postponing the effectiveness of the award. It should be observed that the parties entered into a stipulation postponing the effectiveness of that part of the award which affected the firemen, but no stipulation was entered into as to the trainmen. The parties had a right to act under the award from the moment it became effective, that is, on January 25, 1964. Accordingly, the Court reaches the conclusion that the notices were not served prematurely, but that the defendants were within their rights in serving them.

■ It is next claimed that the notices were insufficient in that they were too broad, because they enumerated groups of runs rather than specific runs. The Court is of the opinion that this contention is not meritorious, and holds that the notices were sufficient.

■ It is then claimed that the boards did not follow the prescribed procedure, and that, therefore, the awards should be set aside. This contention is predicated on the major premise that the provisions of the Railway Labor Act governing the procedure of an arbitration board are applicable to these local adjustment boards. To be sure, the provisions of the Railway Labor Act, found in 45 U.S.C. §§ 158, 159, were binding on the special Board of Arbitration created by the Act of Congress, and those provisions were complied with. The Court is of the opinion, however, that they are not applicable to the special boards of adjustment created under the award.

■ These special boards are creatures of the Arbitration Board and not of any statute. The nearest analogy to these boards is the National Railroad Adjustment Board, which sits in regional divisions. By analogy, it would seem to follow that the procedure prescribed for the divisions of the Adjustment Board should be applicable to the special adjustment boards created under the award, and this Court so holds.

The procedure prescribed by the statute governing these boards is found in subsections (i), (j) and (m) of 45 U.S.C. § 153. The pertinent provisions are as follows:

" * * * the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."

There is no requirement that sworn oral testimony shall be taken. The papers submitted to this Court indicate that this provision was complied with.

It is further provided that:

"Parties may be heard either in person, by counsel, or by other representatives, as they may respectively elect, * * *."

In this case the representatives of the employees declined to be heard.

We now pass to subsection (m). It provides as follows:

"The awards of the several divisions of the Adjustment Board shall be stated in writing. A copy of the awards shall be furnished to the respective parties to the controversy, and the awards shall be final and binding upon both parties to the dispute, except insofar as they shall contain a money award."

There is no provision for filing the award with any Court.

The requirements of subsection (m) have been complied with. These considerations meet the objections of the plaintiff that sworn testimony should have been taken and that a transcript should have been filed, together with the award, in the office of the Clerk of this Court. There is no such requirement.

The Court might also add, however, that it is questionable whether the plaintiff is in a position to challenge the procedure of the board, for it declined to participate in the hearing and failed to tender any evidence, either by way of sworn oral testimony or exhibits.

There is one additional observation that the Court desires to make. The Court is not unmindful of the fact that loss of employment may be a human tragedy to the employee involved and to his family. It is a fact that we are undergoing a dislocation of this type in many industries, somewhat similar, although not to the same degree, to the dislocation that took place a hundred and fifty years ago during the Industrial Revolution. These dislocations cannot be avoided.

In this case, however, no one is going to lose his employment, because the reduction permitted by the awards in the size of train crews is not going to take place except by the process of attrition. In the meantime, the present employees maintain their positions, subject, of course, to being transferred to other work. If I may use a colloquialism, the disastrous effect that might have occurred to numerous employees is cushioned to a large extent. The Court, in making these observations, wishes to emphasize the fact that it is not influenced by them in its decision, because the Courts should not step beyond their proper function of deciding the issues submitted to them.

A transcript of this oral decision will constitute the findings of fact and conclusions of law.

The motion for a preliminary injunction is denied, and counsel may submit an appropriate order.