In re CERTAIN CARRIERS REPRE-SENTED BY the EASTERN, WEST-ERN AND SOUTHEASTERN CAR-RIERS CONFERENCE COMMITTEES, etc.

BROTHERHOOD OF RAILROAD TRAINMEN, Plaintiff,

v.

CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPA-NY (LINES EAST), et al., Defendants.

Misc. No. 41–63; Civ. A. No. 2643–65.

United States District Court
District of Columbia.

Jan. 12, 1966.

See also D.C., 247 F.Supp. 176.

application and administration of the principal award of the Board previously rendered.

Originally the two principal issues in dispute between the Brotherhoods, consisting of railroad employees, and the railroads, were first, the status of firemen on freight trains following the shift from steam-powered locomotives to Diesel engines; and, second, the size and composition of train crews, or the "crew consist", in the jargon of the industry, resulting from technological advances. A special Act of Congress (Act of August 28, 1963, Public Law 88–108, 77 Stat. 129) prescribed a compulsory arbitration of these two problems and created a special arbitration board for that purpose. This board was directed to conduct its proceedings in accordance with the provisions of the Railway Labor Act, 45 U.S.C. § 158, which regulate arbitrations of labor controversies in the railroad industry. Its award was made subject to the limited judicial review accorded by the Railway Labor Act.

Milton Kramer, Washington, D. C., John H. Haley, Jr., St. Louis, Mo., and David L. Uelmen, Milwaukee, Wis., for employees.

Francis M. Shea and Richard T. Conway, Washington, D. C., for carriers.

Paul A. Sweeney, Sp. Asst. to Atty. Gen., Washington, D. C., for United States, intervenor.

HOLTZOFF, District Judge.

This proceeding is an outgrowth of the arbitration directed by the Congress in respect to issues that brought this country to the brink of a nationwide railroad strike in August, 1963. The Court has before it a petition on the part of a group of railway employees, to impeach what may be called a supplemental award of the special Arbitration Board created by the Congress. This award consists of answers to questions submitted to the Board in respect to the interpretation,

This special board, after conducting exhaustive hearings and thoroughly considering the evidence, rendered a comprehensive decision disposing of the two issues submitted to it. In an action to impeach the award, brought pursuant to 45 U.S.C. § 159 by some of the Brotherhoods representing railway employees, the decision was sustained by this Court, Brotherhood of Loc. Fire. & Eng. v. Chicago, B. & Q. R. Co., 225 F.Supp. 11.[1] The judgment of this Court was affirmed by the Court of Appeals for the District of Columbia Circuit, 118 U.S.App.D.C. 100, 331 F.2d 1020, and certiorari was denied by the Supreme Court, 377 U.S. 918, 84 S.Ct. 1181, 12 L.Ed.2d 187.

The Act of Congress, which created the special Board of Arbitration that became known as Arbitration Board No. 282, required it to follow the procedure prescribed generally for arbitration boards created under the Railway Labor Act, as defined in 45 U.S.C. § 158. Para-

1. The opinion of this Court cited in the text summarizes the history of the con-

troversy and the provisions of the award in some detail.

graph (m) of that Section provides that any differences arising as to the meaning or the application of any provision of an award, shall be referred back to the Board for a ruling. Accordingly, Arbitration Board No. 282 has reconvened from time to time to interpret and construe its award in connection with specific questions that have arisen in the course of its application and administration.

The basic award of Board No. 282 made on November 26, 1963, may be divided into two parts. One dealt with the status of firemen on Diesel engines on freight trains. This subject is not before the Court at this time. The other aspect of the award was devoted to the size and composition of train crews, i. e., "crew consists" in the parlance of the industry. This problem had numberless ramifications, since situations vary from train to train and might run into thousands. Manifestly, it would not have been practicable for the Board, especially in the short time at its disposal, to determine the size and composition of the train crew on every train throughout the country. Moreover, the nature of the problem was such as to require flexibility for alterations that may be necessitated by changes in conditions on any specific run from time to time. The Board solved the problem by formulating a series of concrete principles to govern the determination of "crew consist" in individual instances. It provided that proposals for changes in existing written or oral rules should be initiated by notices and handled by negotiations. If no agreement was reached, the matter was to be referred to a special board of adjustment to be selected and convened as prescribed in detail in the award. As heretofore stated, in the action brought to impeach it, the award was sustained by this Court in every respect and the judgment of this Court was affirmed by the Court of Appeals.

Pursuant to the award, such special boards of adjustment were later created for the purpose of solving individual controversies involving the size and composition of crews on individual trains on various railroads. From time to time Board No. 282 was reconvened and rendered supplemental rulings governing activities of these special boards.

The matter now before the Court is an attempt by certain of the Brotherhoods to impeach or set aside several answers of the Board to questions submitted to it by the parties. The present proceeding is brought under 45 U.S.C. § 159, which accords a limited judicial review of an award of an Arbitration Board created under the Railway Labor Act. It has been instituted by a petition filed both in the action that had been originally brought to impeach the basic award, and in a new separate action filed to attack the supplemental award consisting of the answers to which we have just referred. The two petitions, which are practically identical, have been consolidated for a hearing.

The scope of judicial review of an arbitration award under the Railway Labor Act is narrowly limited and restricted. It extends solely to the following matters: failure of the award to conform to the substantive requirements prescribed by the Act; failure of the proceedings to conform to the provisions of the Act; failure of the award to conform or confine itself to the stipulations of the agreement to arbitrate; and, fraud or corruption of a member of the Board or of a party to the arbitration, 45 U.S.C. § 159, paragraph Third. Unlike reviews of decisions of administrative agencies generally, the Court is not vested with any authority to examine the evidence, or to determine whether the findings of the Arbitration Board are sustained by substantial evidence. The Arbitration Board is thus clothed with plenary and final power to determine the controversy provided it adheres to the requirements of law to which reference has just been made. It may perhaps be assumed, without deciding, that the Court might possibly be empowered to set aside a ruling or interpretation of the Board that is so unreasonable on its face as to be adjudged arbitrary or

capricious. This question, however, does not arise in this proceeding.

The supplemental award now questioned was rendered by Arbitration Board No. 282, on October 10, 1965, and consists of answers to specific questions submitted by parties to the arbitration in regard to the construction and application of the award. The answers in controversy are in response to Questions No. 32, 33 and 36, which relate to the activities of special boards of adjustment created pursuant to the direction of Board No. 282, for the purpose of determining individual disputes as to the composition and size of train crews in specific instances.

A preliminary statement contained in the present award of the Board pointedly summarizes and comments on the issues in controversy, as follows (pp. 10, 11, 12 and 13):

"The organizations affected by the Award argue that these special boards of adjustment are bound by the rules applicable to the statutory arbitration boards provided for in Section 7 of the Railway Labor Act. We reject that contention as completely erroneous. Section 7 First of the Act provides for a board of either three or six persons; our Award stipulates a board of three. Section 7 Third (f) requires that the arbitration board shall furnish a certified copy of its award to the respective parties to the controversy, and shall transmit the original, together with the papers and proceedings and a transcript of the evidence taken at the hearings, certified by at least a majority of the board, to the clerk of the federal district court for the district in which the controversy arose, and that certified copies shall also be filed with the National Mediation Board and the Interstate Commerce Commission. Our Award imposes no such requirements. Thus, the logic of the organizations' argument forces them to concede that an award rendered by a special board of adjustment pursuant to

the procedures and guidelines laid down in Award 282, which has been accepted by the parties and put into effect, can nevertheless be voided by either party at some future date because certified copies of the record were not filed with the court, the Mediation Board, and the Commission. We think such a conclusion is plainly contrary to the letter and the spirit of Award 282. (pp. 10–11)

\*　　\*　　\*　　\*　　\*　　\*

"It is true that Section 4 of Public Law 88–108, which established Board 282, states that 'To the extent not inconsistent with this joint resolution the arbitration shall be conducted pursuant to sections 7 and 8 of the Railway Labor Act, the board's award shall be made and filed as provided in said sections and shall be subject to section 9 of the said Act.' We think it clear that the quoted language applies only to Board 282 and not to the special boards of adjustment provided for in its Award. (p. 12)

\*　　\*　　\*　　\*　　\*　　\*

"We do affirm, \* \* \* that it was never our intention that the special boards of adjustment for which we provided would be subject to Sections 7 and 8 of the Railway Labor Act." (p. 13)

We now take up the individual questions in controversy. Question 32(c) enquires whether the awards of the special boards of adjustment were void because (1) the notices served by the carrier were defective; and (2) the carriers did not negotiate with the Brotherhood in good faith, as required by the original direction of Board No. 282. The Board answered that the notices were not defective, except for a closing phrase which makes them applicable to assignments that might be thereafter established. The Board holds that this phrase, which refers to non-existing assignments, should not have been adopted by the special boards of adjustment, and that

**1012**

this provision is void, but does not vitiate the remainder of the award.

■ It was argued by counsel that the Board erred as a matter of law in that the Railway Labor Act, 45 U.S.C. § 159, paragraph Fourth, provided that if a part of the award is held invalid, the entire award should be set aside. This point is lacking in merit. Section 159 applies solely to the award of the statutory Board of Arbitration. The awards here in question were made by the special boards of adjustment locally created pursuant to the provisions of the original award. These special boards are not within the scope of the Railway Labor Act.

This Court has already held that the provisions of the Railway Labor Act are not applicable to the special boards of adjustment. It was stated by this Court In re Certain Carriers, etc., D.C., 231 F. Supp. 519, 521:

"It is then claimed that the boards did not follow the prescribed procedure, and that, therefore, the awards should be set aside. This contention is predicated on the major premise that the provisions of the Railway Labor Act governing the procedure of an arbitration board are applicable to these local adjustment boards. To be sure, the provisions of the Railway Labor Act, found in 45 U.S.C. §§ 158, 159, were binding on the special Board of Arbitration created by the Act of Congress, and those provisions were complied with. The Court is of the opinion, however, that they are not applicable to the special boards of adjustment created under the award.

"These special boards are creatures of the Arbitration Board and not of any statute."

■ As to the second part of this question, Board No. 282 stated:

"On the basis of the record before it, the Board finds no evidence that the carrier failed to negotiate in a manner consistent with the intent of the Award of Board 282."

■ Question 32(d) enquires whether an award of a special board of adjustment relating to assignments of baggagemen is null and void on the theory that the special board has no jurisdiction over baggagemen on the Chicago, Milwaukee, St. Paul and Pacific Railroad Company, because they were governed by a separate agreement rather than by the "crew consist" rule. The Board replied that the special board of adjustment had jurisdiction over these assignments, because they were covered by a rule established by an agreement within the meaning of the original award. Section III, part A(2) of the basic award, which relates to changes in rules requiring the use of a stipulated number of trainmen, specifically enumerates the categories of trainmen that are covered, to wit, assistant conductors, ticket takers, *baggagemen*, brakemen, or firemen. (Emphasis supplied.)

■ Question 33 enquires whether the Chicago, Milwaukee, St. Paul and Pacific Railroad Company violated the provisions of the original award of Board No. 282, by reducing the size of crews on certain trains, without following the prescribed procedure. The Board ruled in effect that the procedure established by the Board for attempts to change the size of a crew, was by its very terms applicable to situations in which there were rules fixing the size of the crew in effect on the effective date of the award, irrespective of whether such rules were established by agreement, interpretation, or practice. The procedure was not applicable in case there was no existing rule. The Board further held that if there was a dispute whether a rule existed immediately prior to the effective date of the award, an issue of fact was created to be determined under the existing procedure provided by the Railway Labor Act for the settlement of "minor" disputes, i. e., by the National Railroad Adjustment Board, created under 45 U.S. C. § 153.

■ Question 36(a) enquires whether certain notices of proposed changes in the

size and composition of train crews were served prematurely, and, second, whether they were defective on the theory that they were too broad. Board No. 282 answered each of these questions in the negative. On the oral argument before this Court, objections to the first part of the answer were abandoned. The objection to the form of the notices was, in effect, that the notices covered groups of runs, rather than specific runs. The Board held these notices to be proper and this Court had previously reached the same conclusion, In re Certain Carriers, etc., D.C., 231 F.Supp. 519, 521.

Questions 36(b) and (c) renewed in a different form the objections to the procedure followed by the local boards, which have been already discussed.

■ Question 36(d) enquires whether there was substantial evidence to support the awards of each of the special boards of adjustment and whether each of the awards confines itself and conforms to the guidelines of the basic award of Board No. 282. The answer of the Board is as follows:

"The essential criterion is not whether there is substantial evidence to support the awards of the special boards of adjustment but rather whether there is substantial evidence to show that the special boards of adjustment failed to apply or to confine themselves to the guidelines prescribed by the Award of Board 282. On the basis of the record before it, the Board finds no evidence that the special boards failed to comply with the requirements of the Award."

It must be borne in mind that this Court may not review the question whether there was substantial evidence to support the awards of the individual special boards, nor may Board No. 282 do so. The scope of judicial review under the Railway Labor Act is much narrower than that in respect to decisions of administrative agencies generally, as has already been shown.

■ The principal attack on the decisions of the special boards of adjustment, is that the proceedings conducted by these tribunals were informal and that no stenographic record was made of the testimony. The United States was, without objection, permitted to intervene in the present action. Counsel for the Government at the oral argument informed the Court that practically all of these boards proceeded in the same manner and that no stenographic records were kept by most if not any of them. He called attention to the fact that at this late date if this mode of procedure were held to be in violation of law, it would be necessary to set aside and vacate all of the rulings of the special boards and to require them to conduct new hearings. The result would be delay and expense with possible detriment to both sides of the controversy. It does not appear that the Brotherhoods either requested the boards to proceed in any other manner, or that they moved that a stenographic record be kept of the testimony. It is not unlikely that if such a request had been made at the beginning, it might well have been complied with. It is not appropriate for them to raise the objection at this late date after remaining silent while the special boards were in operation.

The question before this Court is, of course, not what this Court would have held in each individual instance on a trial *de novo*. It is merely whether Board No. 282 exceeded its power, committed some error of law, or acted arbitrarily or capriciously. No basis is perceived for setting aside the rulings of the Board. This Court is of the opinion that the decisions of Board No. 282 involved in this proceeding, were entirely valid and proper and should be sustained.

The petition to impeach the award consisting of the answers to questions here in issue, is dismissed.