**330**

Glen JENNINGS, et al., Plaintiffs,

v.

**GRAND TRUNK WESTERN RAIL SYSTEM, et al., Defendants.**

No. C–2–83–747.

United States District Court,
S.D. Ohio, E.D.

June 28, 1984.

Herschel M. Sigall, Columbus, Ohio, for plaintiffs.

Mary P. Sclawy, Detroit, Mich., Alvin McKenna, Nancy Sponseller, Columbus, Ohio, for defendants.

## MEMORANDUM AND ORDER

DUNCAN, District Judge.

This action was originally commenced by plaintiffs under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Plaintiffs seek a remedy for their discharges which they claim were in breach of the collective bargaining agreement in existence between the parties. Specifically, following defendant Grand Trunk Western Railroad Company's purchase of Detroit, Toledo and Ironton Railroad (DT & I), the plaintiffs were discharged. Plaintiffs allege that the New York Dock Agreement, applicable by virtue of DT & I's acquisition, required defendant to pay plaintiffs dismissal allowances. Plaintiffs alleged that defendant's failure to do so constituted a breach of contract in violation of 29 U.S.C. § 185.

Defendant Grand Trunk Western Railroad Company (Grand Trunk) moved to dismiss on the grounds of lack of jurisdiction and failure to state a claim for relief. Plaintiffs then filed an amended complaint alleging a cause of action under the Railway Labor Act, 45 U.S.C. §§ 151, *et seq.*, as opposed to the Labor Management Relations Act. Defendant Grand Trunk filed a reply memorandum renewing their motion to dismiss. Specifically, defendant argues that arbitration, which resulted in an award adverse to plaintiffs, is the exclusive remedy under the Railway Labor Act. For the reasons set forth more fully below, the Court finds defendant's motion well taken, and it is GRANTED.

The facts giving rise to this suit may be summarized briefly.

Following approval by the Interstate Commerce Commission, Finance Docket No. 28676, Grand Trunk acquired DT & I. The acquisition was effective June 24, 1980. On September 4, 1979, in anticipation of the acquisition, Grand Trunk and various unions representing railway employees entered into an agreement (hereinafter referred to as "September 4 Agreement") which provided that the "New York Dock Conditions," 354 I.C.C. 399, as modified on February 23, 1979, would apply to protect the interests of employees of Grand Trunk and DT & I. The September 4 Agreement provides in pertinent part:

> *Section 2.* All "protected employees" of GTW [and] DT & I ... shall be certified as adversely affected.

.　　.　　.　　.　　.

(b) All employees in the active employment of GTW [or] DT & I ... on the date of acquisition of DT & I by GTW shall be "protected employees."

(c) All other employees (*i.e.*, those on authorized leave of absence or furlough) with an employment relationship with GTW [or] DT & I ... on such date of acquisition shall become "protected employees" as of the date they became actively employed by their respective carrier employer.

. . . .

*Section 3.* The protected period for a "protected employee" shall be from the date he is certified as adversely affected . . .

. . . .

*Section 11.* This Agreement will be effective as to each labor organization upon the date of acquisition or the date upon which the labor organization and GTW came to agreement on a single working agreement for all the employees they represent on the GTW and DT & I, whichever date is later and the employees shall be entitled only to the protective conditions provided in Finance Docket No. 28676 (Sub. No. 1F) until such date.

Pursuant to Section 11 of the September 4 Agreement, the parties negotiated a collective bargaining agreement which was signed on February 23, 1982, and became effective March 1, 1982 (hereinafter "February 23 Agreement"). The February 23 Agreement expressly provides that a " 'Protected employee' as used in this Agreement is one defined as such in the September 4, 1979 Agreement." The February 23 Agreement further provides that

[t]his [Agreement] covers those employees ... who do not have a regular assignment on the effective date of this Agreement but who have a seniority date prior to June 25, 1980. When such an employee after the effective date of this Agreement obtains the status of a regularly assigned employee he shall be considered a protected employee and he shall on such date be certified as "adversely affected."

Prior to the September 4 Agreement, plaintiffs were employed at the DT & I shop located in Jackson, Ohio. However, plaintiffs were furloughed sometime before March 1, 1982. Plaintiffs are still furloughed.

Based upon the foregoing, plaintiffs contend that they were furloughed as a result of the DT & I acquisition and therefore they are entitled to a dismissal allowance pursuant to the provisions of the September 4 Agreement and the New York Dock Conditions. Conversely, defendants state that the workforce reductions at the Jackson Shop resulted from declining revenues rather than the DT & I acquisition. Defendants also dispute plaintiffs' right to "protected employee" status.

Following their discharges, plaintiffs filed grievances with their Union. Unable to resolve the plaintiffs' claims through the grievance procedure, the Union and Grand Trunk agreed to arbitrate those claims. Plaintiffs filed suit while the parties were selecting arbitrators. Plaintiffs' counsel was notified that the claims were going to arbitration, and plaintiffs agreed to delay discovery while the arbitration was pending. Plaintiffs took no steps to terminate the arbitration proceedings.

Thereafter the arbitrators found that under the September 4 Agreement the effective date of the protective conditions was March 1, 1982, the date the negotiated February 23 Agreement became effective. The arbitrators further found that only employees actively employed on that date could be certified as adversely affected and included in the protected employee class. Since plaintiffs were discharged before March 1, 1982, they were not entitled to certification as adversely affected. Nor were plaintiffs eligible for the dismissal allowances provided for in the September 4 Agreement and the New York Dock Conditions. Plaintiffs now seek to upset the arbitration award and to have this Court consider *de novo* their allegations of breach of contract.

Courts have not allowed parties to arbitrate a claim, await the outcome of the arbitration, and then challenge an unfavorable award. In *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960), the Supreme Court stated that "[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *See also United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 585, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 (1960).

The Railway Labor Act (RLA), which is applicable in the case at bar, provides for the voluntary arbitration of disputes, 45 U.S.C. § 157. The RLA further provides that an arbitration award "shall be conclusive on the parties as to the merits and facts of the controversy submitted to arbitration ... unless ... a petition [is filed] to impeach the award, on the grounds hereinafter set forth ...." 45 U.S.C. § 159. The only grounds upon which an arbitration award may be impeached are:

(a) That the award plainly does not conform to the substantive requirements laid down by this chapter for such awards, or that the proceedings were not substantively in conformity with this chapter;

(b) That the award does not conform, nor confine itself, to the stipulations of the agreement to arbitrate; or

(c) That a member of the board of arbitration rendering the award was guilty of fraud or corruption ....

Provided further that an award contested as herein provided shall be construed liberally by the court, with a view to favoring its validity and that no award shall be set aside for trivial irregularity or clerical error, going only to form and not to substance.

45 U.S.C. § 159.

■ Having stated the applicable standard of review, the only issue remaining is whether the arbitration award in this case may be upset based upon one of the above-quoted grounds for upsetting such an award. *See, e.g., In re Certain Carriers Represented by Eastern, Western & Southeastern Carriers Conference Committees*, 248 F.Supp. 1008, 1010, 1013 (1966), *aff'd.*, 380 F.2d 605 (D.C.Cir.), *cert. denied*, 389 U.S. 928, 88 S.Ct. 289, 19 L.Ed.2d 279 (1967). Plaintiffs allege and the Court can discern no basis for setting aside the arbitrators' decision in this case. The Court notes that plaintiffs have again requested permission to amend their complaint so as to include grounds for challenging the arbitration award. However, plaintiffs do not specifically or even generally indicate what these grounds might be. At this point, therefore, this Court cannot help but conclude that there is no basis for amendment and that permission to amend would simply further delay the resolution of this controversy.

The arbitrators interpreted the collective bargaining agreements in this case as only providing the benefits of the September 4 Agreement and the New York Dock Conditions to those actively employed as of March 1, 1982. As a factual matter, the arbitrators found that plaintiffs were not actively employed on March 1, 1982, and were therefore not entitled to dismissal allowances under the collective bargaining agreements.

■ Because of the limited powers of review in railway arbitration cases, it is not within this Court's authority to substitute its opinion for that of the arbitrators. "The parties have bargained for the arbitrator's decision, not the Court's ...." *Anaconda Co. v. District Lodge No. 27 of the Int'l. Assoc. of Machinists*, 693 F.2d 35, 37 (6th Cir.1982) (*per curiam*). Plaintiffs were fully advised of the arbitration proceedings and allowed their claims to be submitted to arbitration. Plaintiffs fail to allege any irregularity in the conduct of the arbitration itself. They cannot now attack that decision.

This action is hereby DISMISSED.

So ORDERED.