646 F.Supp. 367 (1986)
The MAINE CENTRAL RAILROAD COMPANY and the Portland Terminal Company, Plaintiffs,
v.
BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES and National Mediation Board, Defendants.
Civ. No. 86-0311-P.
United States District Court, D. Maine.
October 7, 1986.
John Spelman, Klehr, Harrison, Harvey, Philadelphia, Pa., Charles S. Einsiedler, Jr., Pierce, Atwood, Scribner, Portland, Me., for plaintiffs.
John B. Clarke, Jr., Highsaw & Mahoney, Washington, D.C., Craig J. Rancourt, Biddeford, Me., for Brotherhood.
David R. Collins, Asst. U.S. Atty., Portland, Me., Thomas Millet, Dept. of Justice, Civil Div., Washington, D.C., for National Mediation.

MEMORANDUM OF DECISION AND ORDER
GENE CARTER, District Judge.
In this action for a Temporary Restraining Order, Plaintiffs Maine Central Railroad *368 Company and Portland Terminal Company (the "Railroad") seek to enjoin the enforcement of a special act of Congress, Pub.L. 431, 100 Stat. 987 (September 30, 1986) (the "Second Act"), that imposes a settlement of the ongoing labor dispute between Plaintiffs and the Defendant, Brotherhood of Maintenance of Way Employees (the "Organization").
The Second Act is the successor to a previous special act, Pub.L. No. 385, 99th Cong., 2d Sess., 100 Stat. 819, the enforcement of which this Court declined to enjoin in Maine Central R.R. v. Brotherhood of Maintenance of Way Employees, Civil No. 86-00263-P, slip op. (D.Me. Sept. 10, 1986). The previous act extended the statutory "cooling off" period under the Railway Labor Act in the dispute until September 18, 1986. In the Second Act, Congress purports to settle the parties' labor dispute by enacting in its entirety the report and recommendations of Presidential Emergency Board No. 209 (the "Board").
The Railroad contends that the Second Act: (1) violates the equal protection clause of the Fifth Amendment by impermissibly imposing burdens on a class of one; (2) deprives the Railroad of property without due process; (3) violates separation of powers by adjudicating the rights of the parties; and (4) violates the nondelegation doctrine by delegating legislative authority without established standards. Finding that the Railroad has not met its burden for temporary relief at this juncture, this Court denies the requested relief.
In order to prevail on its motion for a temporary restraining order, the Railroad must satisfy each of four essential requirements. This Court has articulated these requirements on many prior occasions. They are:
"It is well settled law that, in the ordinary case, a plaintiff must satisfy four criteria in order to be entitled to a preliminary injunction. The Court must find: (1) that the plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which the granting of injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction."
Stanton by Stanton v. Brunswick School Dept., 577 F.Supp. 1560, 1567 (D.Me.1984) (quoting UV Industries, Inc. v. Posner, 466 F.Supp. 1251, 1255 (D.Me.1979) (per Gignoux, J.)). Before discussing each of these requirements, the Court first notes the principles of equity that govern the issuance of injunctive relief. Professor Wright has described them as follows:
The classic principles governing availability of injunctions were summarized by Justice Baldwin, sitting at circuit, in 1830: `There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in doubtful case, than the issuing of an injunction; it is the strong arm of equity, that never ought to be extended unless to cases of great injury, where courts of law cannot afford an adequate or commensurate remedy in damages. The right must be clear, the injury impending or threatened, so as to be averted only by the protecting preventive process of injunction: but that will not be awarded in doubtful cases, or new ones, not coming within well established principles; for if it issues erroneously, an irreparable injury is inflicted, for which there can be no redress, it being the act of a court, not of the party who prays for it. It will be refused till before them is a right about to be destroyed, irreparably injured, or great and lasting injury about to be done by an illegal act; in such a case the court owes it to its suitors and its own principles, to administer the only remedy which the law allows to prevent the commission of such act.'
"To this day courts continue to stay their hand until there has been a clear showing of irreparable injury for which there is no other adequate remedy.'
3 Barron & Holtzoff, Federal Practice and Procedure (Wright Ed.) § 1431.
*369 It is with these principles in mind that the Court considers, in their order of significance to the present motion, the four requirements that the Railroad must meet to prevail.

A. The Public Interest

There are two distinct public interests at stake in this action. One is the general public interest in the validity of a congressional enactment. The other is the public interest in the stability of essential transportation services.
Congress expressly enacted the challenged legislation under its Commerce Clause powers "to ensure the uninterrupted operation of essential transportation services." ¶ 9, Pub.L. 431 (September 30, 1986). It has long been recognized that Congress receives a grant of plenary authority through the Commerce Clause and can exercise this power "to its utmost extent" within the other limitations of the Constitution. Gibbons v. Ogden, 9 Wheat. 1, 196 (1824). It has also long been accepted that Congress may regulate the activities of this nation's railroads. Virginia Railway v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937) (upholding validity of Railway Labor Act). As the Supreme Court explained in Hodel v. Virginia Surface Mining & Reclamation Association, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981): "The task of a court that is asked to determine whether a particular exercise of congressional power is valid under the Commerce Clause is relatively narrow. The court must defer to a congressional finding that a regulated activity affects interstate commerce, if there is any rational basis for such a finding." Id. at 276, 101 S.Ct. at 2360. (Emphasis added). Once the Court is satisfied that Congress has acted within the powers granted to it under the Commerce Clause, "the only remaining question for judicial inquiry is whether `the means chosen by [Congress are] reasonably adapted to the end permitted by the Constitution.'" Hodel, 452 U.S. at 276, 101 S.Ct. at 2360 (quoting Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 262 (1964)). Given the circumscribed role of the Court in considering a challenge to commerce power legislation, this Court must hesitate before it overrules a clear expression of congressional policy.
The Court's reticence becomes more profound when the Court considers the effect of the Railroad's request on the second public interest at stake: the preservation of essential transportation services. The Court keeps foremost in mind that the purpose of injunctive relief is to preserve the status quo until a final adjudication can be had on the merits. Stanton, 577 F.Supp. at 1567 (citing Toledo, A.A. to N.M. Ry. Co. v. Pennsylvania Co., 54 F. 730 (C.C.N. D.Ohio 1893)). The history of both the congressional and executive intervention in the parties' ongoing labor dispute, however, evidences one consistent theme: the prevention of a debilitating railroad strike by maintaining a status quo that has prohibited self-help. If the Court were to grant the Railroad's request, the temporary restraining order would not preserve the status quo; rather, it would upset a carefully engineered status quo designed by the Congress and the President.
It is clear to the Court that both the Second Act and its predecessor have been instrumental in preventing a resort to self-help by both parties: without the promise of congressional intervention, the Organization, as it has averred before this Court on many previous occasions, would clearly have called a strike in response to the Railroad's plan to implement its new rules. The threat of a railroad strike similar to that which began to paralyze East Coast railway service this past spring, and which arose out of this very labor dispute, is so serious a threat to the public interest that this Court must not act hastily to defeat Congress's policy decision that it should be avoided in the public interest. See Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 675, 88 L.Ed. 834 (1944) ("But where an injunction is asked which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in *370 the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff."); Virginia Railway v. System Federation No. 40, 300 U.S. 515, 552, 57 S.Ct. 592, 601, 81 L.Ed. 789 (1937) ("Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.").

B. Railroad's Likelihood of Success on the Merits

The Railroad challenges the means chosen by Congress to reach its admittedly valid goal primarily on due process and equal protection grounds. To establish its claim, Railroad must assume a heavy burden in this Court. As the Supreme Court noted in Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), in evaluating Congress's power to impose retroactive economic obligations on coal mine operators:
It is now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.
Id. at 15, 96 S.Ct. at 2892 (citing Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955)). The Railroad must assume this same burden even if it alleges that the economic legislation substantially alters contractual rights and duties in a manner that violates due process. National Railroad Passenger Corp. v. Atchison, Topeka & Santa Fe Railway, 470 U.S. 451, 475, 105 S.Ct. 1441, 1457, 84 L.Ed.2d 432, 453 (1985) (citing, inter alia, Turner Elkhorn).
In assessing the Railroad's likelihood of success on the merits, the Court may consider in its evaluation the challenger's burden of persuasion under that challenge. Tennessee Valley Authority v. Tennessee Electric Power Co., 90 F.2d 885, 892 (6th Cir.1937). In addition, the Court may consider whether other courts have sustained Congress's authority to enact statutes not readily distinguishable from the challenged statute. Id. See also Barton v. Bergland, 444 F.Supp. 447, 450 (E.D. Ky.1978), aff'd, 579 F.2d 1009 (6th Cir.1978) (in evaluating the propriety of issuing a preliminary injunction requested by tobacco growers against regulations promulgated by Secretary of Agriculture, court noted that similar restrictions had been upheld under the Commerce Clause).
In considering both the Railroad's burden in this case and the dearth of success encountered by litigants raising equal protection claims that do not include fundamental rights or suspect classifications against economic regulation, the Court finds that the likelihood of the Railroad's success on the merits is at best subject to serious question. Similarly, the Railroad's separation of powers and delegation doctrine arguments present difficult and unsettled questions of law. Because the Railroad's challenge to the present congressional enactment raises difficult questions of law that "cannot be forecast with any degree of certainty," this Court may withhold injunctive relief if the order would frustrate congressional policy and adversely affect the public interest. Montana Contractors' Association v. Secretary of Commerce, 439 F.Supp. 1331, 1334-35 (D.Mont.1977) (equal protection clause challenge to the minority business enterprise set-aside provision of Public Works Employment Act of 1977).

C. Irreparable Injury and Weighing the Competing Harms to Plaintiffs and Defendants

The Railroad claims irreparable injury in the nature of economic harm and deprivation of constitutional rights. It also argues that the harm to the Organization would be not greater than or at least equal to the harm to the Railroad. The Railroad's *371 constitutional claims are, however, at best unsettled. See supra Part B. Moreover, economic injury standing alone generally will not constitute irreparable injury. See McDonough v. Trustees of University System of New Hampshire, 704 F.2d 780, 784 n. 2 (1st Cir.1983). Without a clear showing of irreparable harm, this Court should not grant the requested relief. Cf. National Association of Farm-workers Organization v. Marshall, 628 F.2d 604 (D.C.Cir.1980) (district court abused its discretion in not granting preliminary relief where movant demonstrated irreparable injury to itself, little harm to others or the public interest, and presented serious question of law even if likelihood of success on the merits was not shown). Accord Henry v. Greenville Airport Commission, 284 F.2d 631, 633 (4th Cir.1960) (in race discrimination case, court had "no discretion to deny relief by preliminary injunction to a person who clearly establishes by undisputed evidence that he is being denied a constitutional right").
Accordingly, the Plaintiffs' request for a Temporary Restraining Order, filed on October 1, 1986, is hereby DENIED, and it is SO ORDERED. It is hereby FURTHER ORDERED that counsel herein shall attend a Scheduling Conference before the Court on Friday, October 10, 1986, at 1:30 p.m., at which time the Court will confer with counsel in order to implement an expedited schedule to bring promptly to final trial the Plaintiffs' claim herein for a Permanent Injunction against enforcement of the subject special act.