## The MAINE CENTRAL RAILROAD COMPANY and the Portland Terminal Company, Plaintiffs,

v.

## BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES, Defendant.

### Civ. No. 86–0366–P.

United States District Court, D. Maine.

Dec. 22, 1986.

Ralph Moore, Shea & Gardner, Washington, D.C., Charles S. Einsiedler, Pierce, Atwood, Scribner, Portland, Me., for plaintiffs.

John O'B. Clarke, Jr., Thomas P. Murphy, Highsaw & Mahoney, Washington, D.C., Craig J. Rancourt, Bruce M. Read, Biddeford, Me., for defendant.

### MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

I.

Presently before the Court is a motion by Plaintiffs, Maine Central Railroad Company and Portland Terminal Company (the "Railroad"), to stay the effectiveness of the arbitration award between Plaintiffs and Defendant, Brotherhood of Maintenance of Way Employes (the "Organization"), entered on October 30, 1986, and filed in this Court on November 3, 1986. This award represents the resolution of the "unresolved implementing issues" remain-

ing after Congress imposed a settlement of the ongoing labor dispute between the parties by the enactment of Public Law No. 99–431. The Railroad's motion arises from its petition to set aside the award, filed within ten days of the filing of the award in this Court as required by 45 U.S.C. § 159, Second. The Court finds it has jurisdiction under 28 U.S.C. §§ 1331, 1337 and 45 U.S.C. § 159.

The Railroad has alleged two grounds for the relief it seeks. First, the Railroad argues that the Court should grant a stay analogous to the stay authorized by Fed.R. Civ.P. 62(d) if the Railroad were to comply with the requirements of the Rule by posting a supersedeas bond. In the alternative, the Railroad argues that the Court should employ its inherent equitable powers to restrain temporarily the effectiveness of the award pending a decision on the merits of the Railroad's petition to impeach the award. For the reasons set forth below, the Court determines that it may not apply Rule 62(d) by analogy. Furthermore, the Court also determines that the Railroad has not met its burden for temporary relief.

## II.

■ Congress expressly provided that the arbitration award currently challenged by the Railroad is to be enforceable under section 9 of the Railway Labor Act, 45 U.S.C. § 159. Pub.L. No. 99–431(a)(3)(B). The Federal Rules of Civil Procedure do in some instances apply to section 159 proceedings. Rule 81 expressly provides that the Rules apply to "proceedings under ... Title 45, § 159, relating to boards of arbitration of railway labor disputes, ... only to the extent that matters of procedure are not provided for in [that statute]." Fed.R. Civ.P. 81(a)(3). In order to determine whether the Court may apply Rule 62(d), the Court must examine both the scope of Rule 62(d) and the nature of the proceeding before it in light of the mandate of Rule 81(a)(3).

Rule 62(d) applies to only appeals by appellants. The proceeding before this Court is not, however, an appeal. Instead, it is a petition to impeach the award arising out of specific statutory grounds for impeachment. 45 U.S.C. § 159, Third. The statute also provides for an appeal of an arbitration award; an appeal arises only after this Court has rendered its decision on the petition to impeach. *Id.* § 159, Fifth. Clearly, Rule 62(d) is not directly applicable.

In addition, the Court finds that it should not apply the Rule by analogy. First, the Railroad has cited no case law actually employing its proffered rationale for drawing this analogy, nor has the Court discovered any through its own research. *But see In re Certain Carriers,* 231 F.Supp. 519, 521 (D.D.C.1964) (noting that an award is enforceable even if an action to impeach the award has been brought where the action did not include an application for a stay), *modified on other grounds,* 349 F.2d 207 (D.C.Cir.1965). Second, if the Court were to look to the Rules for an analogy to the present proceeding, the Court would more likely find it in Fed.R.Civ.P. 60, relief from judgment, a procedure which does not affect the finality of a judgment or suspend its operation. Finally, Rule 81(a)(3) appears to preclude this type of analogy-drawing by the Court. Consequently, the Court finds that it may not apply Rule 62(d), either directly or by analogy, because the Rule does not encompass a matter of procedure not provided for by section 159 with regard to the proceeding before this Court.

## III.

■ Having found that the Railroad's first argument for its current motion fails, the Court turns to the Railroad's request for equitable relief. The Court construes this request as a request for preliminary injunctive relief. In order to prevail, the Railroad must satisfy *each* of four essential requirements. This Court has articulated these requirements on many prior occasions, most recently in several applications for preliminary relief requested by the Railroad in related cases. *See Maine*

*Central R.R. v. Brotherhood of Mainte-
nance of Way Employees,* 646 F.Supp. 367
(D.Me.1986); *Maine Central R.R. v. Broth-
erhood of Maintenance of Way Employ-
ees,* —— F.Supp. —— Civil No. 86–0083–P,
slip op. (D.Me. March 5, 1986). They are:

"It is well settled law that, in the ordi-
nary case, a plaintiff must satisfy four
criteria in order to be entitled to a prelim-
inary injunction. The Court must find:
(1) that the plaintiff will suffer irrepara-
ble injury if the injunction is not granted;
(2) that such injury outweighs any harm
which the granting of injunctive relief
would inflict on the defendant; (3) that
plaintiff has exhibited a likelihood of suc-
cess on the merits; and (4) that the pub-
lic interest will not be adversely affected
by the granting of the injunction."

*Stanton by Stanton v. Brunswick School
Dep't,* 577 F.Supp. 1560, 1567 (D.Me.1984)
(*quoting UV Industries, Inc. v. Posner,*
466 F.Supp. 1251, 1255 (D.Me.1979) (per
Gignoux, J.)).

### A. *Likelihood of Success on the Merits*

The Court begins its review of the Rail-
road's likelihood of success on the merits
by noting the extremely narrow standard
of review applicable to arbitration awards
under section 9 of the Railroad Labor Act,
45 U.S.C. § 159. *Cf. Union Pacific R.R. v.
Sheehan,* 439 U.S. 89, 90, 99 S.Ct. 399, 400,
58 L.Ed.2d 354 (1978) (noting that the
courts have described the similar restric-
tions under section 3 of the Act, 45 U.S.C.
§ 153, as "among the narrowest known to
the law"), *reh'g denied,* 439 U.S. 1135, 99
S.Ct. 1060, 59 L.Ed.2d 98 (1979); *accord
Myron v. Consolidated Rail Corp.,* 752
F.2d 50, 52 (2d Cir.1985); *Denver & Rio
Grande Western R.R. v. Blackett,* 538 F.2d
291, 293 (10th Cir.1976). In order to suc-
ceed on the merits, the Railroad must im-
peach the award only on one of the three
following grounds:

(a) That the award plainly does not con-
form to the substantive requirements
laid down by this chapter for such

awards, or that the proceedings were not
substantially in conformity with this
chapter;

(b) That the award does not conform, nor
confine itself, to the stipulations of the
agreement to arbitrate; or

(c) That a member of the board of arbi-
tration rendering the award was guilty
of fraud or corruption; or that a party to
the arbitration practiced fraud or corrup-
tion which fraud or corruption affected
the result of the arbitration....

45 U.S.C. § 159, Third. In addition, the
Court is to construe the award liberally,
"with a view to favoring its validity." *Id.*

The Railroad has alleged five defects in
the arbitration award: (1) the failure of the
arbitration board to allow the Railroad to
present certain evidence; (2) the failure of
the board to prepare a transcript of the
proceedings or to make a tape recording of
the proceedings available to the Railroad;
(3) the failure of the Board to adhere to the
recommendations of the Emergency Board
in the setting of *per diem* allowances; (4)
the allowance of the retroactive and lump
sum payments in accordance with national
wage settlement agreements; and (5) the
imposition of a two-year moratorium on the
arbitrated agreement. These defects as al-
leged appear to fall within the defined stat-
utory grounds: the first two allege failures
to conform the proceedings to the mandate
of the statute; the last three allege that
the award exceeds the scope of the con-
gressionally imposed mandate to arbitrate.

It is not clear to the Court at this junc-
ture that the Railroad will succeed on ei-
ther ground of its statutory challenge.[1]
With regard to the first ground, based on
the allegations currently before the Court,
it appears that the Railroad may have
waived any defects in the proceedings, if in
fact there were any defects at all, by pur-
suing this ground for the first time in this
Court. *Krieter v. Lufthansa German
Airlines, Inc.,* 558 F.2d 966, 968 (9th Cir.

---

1. The Court also notes that it has recently re-
fused to enjoin the enforcement of Public Law
No. 99–431, which authorized the arbitration

award currently challenged. *Maine Central
R.R. v. Brotherhood of Maintenance of Way Em-
ployees,* 646 F.Supp. 367 (D.Me.1986).

1977); *Order of Railway Conductors v. Clinchfield R.R.*, 407 F.2d 985, 988 (6th Cir.), *cert. denied*, 395 U.S. 841, 90 S.Ct. 104, 24 L.Ed.2d 92 (1969). With regard to the second ground, the Court is not convinced that the arbitration board exceeded its mandate when the Court construes the agreement, as it is commanded to do by statute, "with a view to favoring its validity." Plaintiffs have, therefore, not demonstrated a likelihood of success on the merits.

### B. *Irreparable Injury*

The Railroad's claim of irreparable injury rests solely on the "immediate financial burden of the award." Economic injury standing alone, however, generally does not constitute irreparable injury. *McDonough v. Trustees of University System of New Hampshire*, 704 F.2d 780, 784 n. 2 (1st Cir.1983). Nevertheless, the Railroad argues that it falls within the narrow exception recognized in *Itek Corp. v. First National Bank*, 511 F.Supp. 1341, 1348–50 (D.Mass.1981), *aff'd*, 730 F.2d 19 (1st Cir. 1984). In *Itek*, the trial court had found that the plaintiff lacked an adequate remedy at law since its "only recourse would be a lawsuit against the Iranian Government" and "the present domestic situation there has rendered access to Iranian courts futile." *Id.* at 1349. Thus, the court concluded that the monetary damages at issue, which were unrecoverable despite the facial availability of a remedy at law, were in fact irreparable.

The Railroad argues that the workers destined to receive these funds will likely spend most or all of the money immediately. In addition, it argues that the cost of litigation to recover the funds would likely exceed the amount recoverable. These allegations, however, fail to demonstrate to this Court that the Railroad's harm is irreparable. First, the Railroad offers no support for its allegations regarding the workers' behavior other than *its view* that the result it envisions is "likely." The Court has absolutely no information before it regarding the financial situation of the individual workers. It is not shown that the payments awarded are likely to be immediately attached by creditors or that the workers in question are on the brink of insolvency. The Court has no factual predicate upon which to make a finding of irreparable harm. Without such facts, it is not clear to the Court that attempts to recover the funds, should recovery become appropriate, would be futile.

Nor does the Railroad's reliance on *Railway Labor Executives' Association v. Gibbons*, 448 U.S. 1301, 100 S.Ct. 2668, 65 L.Ed.2d 1094 (Stevens, J., Circuit Justice), *stay denied per curiam*, 448 U.S. 909, 100 S.Ct. 3057, 65 L.Ed.2d 1140 (1980), alter the Court's conclusion in this respect. In that case, Justice Stevens found that the protection payments of up to $75 million at issue would be unrecoverable, based on the facts before him, including, presumably, the findings of the district court. Unfortunately, the Justice did not enumerate these facts, nor did the district judge publish his findings in the case below, *In re Chicago Rock Island & P. R.R.*, No. 75–B–2697 (N.D.Ill., June 5, 1980). Consequently, this Court cannot determine whether the factual circumstances are similar to those alleged by the Railroad.

Finally, the Court does not believe that the cost of the litigation necessary to recover any monies found to be wrongfully awarded in and of itself renders access to the remedy at law futile. The high cost of litigation is an unfortunate reality. It may indeed make a legal remedy appear unattractive. This unattractiveness has not, however, become the equivalent of the futility recognized by the court in *Itek*.

It also appears to the Court that the immediate economic injury of which the Railroad complains is in reality much narrower than it asserts in support of this motion. The scope of the harm envisioned by the Railroad appears to rest in part on the statutory provision that mandates that the Court set aside the entire award if any part is found to be invalid. 45 U.S.C.

§ 159, Fourth. The Railroad ignores, however, the exception to that mandate: the parties may agree that the valid and invalid parts are separable and thereby allow the Court to set aside only the invalid part. *Id.* The amounts actually in controversy in the Railroad's underlying petition include a challenge to the eligibility of four employees for protective allowances, "roughly $38,000 in back pay, and roughly $112,000 in the first two installments of the lump sum payment provision." The Court is unconvinced that economic injury of this magnitude, even if it proves to be such, is irreparable in nature. *See Wisconsin Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C.Cir. 1985). Moreover, the Court does not believe it to be likely that, if it were to find the challenged part of the award invalid, the parties would thereafter be unable to agree, after principled consideration, that the invalid portion was separable.

### C. *Balance of Interests and the Public Interest*

Having been unpersuaded by the Railroad's arguments regarding the first two requirements for temporary relief, the Court will address the last two only briefly. Certainly, the balance of interests between the parties is apparently equal: each side wishes to receive or retain the economic benefits at issue. In actuality, the individual workers may suffer more from a deprivation of these funds, perhaps over a considerable period of time, were the Court to delay the entire award, many aspects of which are not in actual controversy in this action. The public interest, however, appears to the Court to weigh heavily in favor of upholding the resolution of this dispute—a resolution which Congress has attempted to effectuate, with the considered approval of the President, and which the controlling statute mandates should be construed to be valid if possible.

Accordingly, the Railroad's requests for a stay or injunctive relief, filed on November 13, 1986, is hereby DENIED.

So ORDERED.